# Yerger v. Guldin

*Carl M. Binder*, of *Binder & Binder*, and *Julian W. Barnard*, for plaintiff.

*Victor J. Roberts*, for defendant.

KNIGHT, P. J., November 12, 1943.—This is a bill in equity, brought by an administratrix, to set aside the transfer of a bank account by her decedent, on the ground that the transfer was made with intent to delay and defraud creditors. The chancellor dismissed the bill on the ground that plaintiff had failed to show by competent evidence that the decedent had any creditors who were defrauded or that the transfer was made with that intent.

The whole issue depended upon one alleged claim against the decedent. The court of quarter sessions of this county entered the following order on the decedent:

"1924 April 19: — The Court sentenced defendant Charles W. Guldin to pay his wife, Sallie Guldin $7.50 per week toward the support of his two children, Katharine and Leon."

Plaintiff alleged that there was due as arrearages on this order the sum of $5,026, and that this debt would render the decedent insolvent at the time he made the transfer.

Sallie Guldin is still living. She was her husband's creditor and could have recovered any arrearages due to her on the above support order from him or his estate: Bouslough v. Bouslough, 68 Pa. 495 (1871). The burden was upon Sallie Guldin to establish her claim by competent evidence; this she did not attempt to do. Plaintiff, her daughter, as administratrix of her father, the decedent, and acting on behalf of Sallie Guldin, a creditor, sought to set aside the transfer of the bank account, by showing that the arrearages in the support order were due at the time of Charles W. Guldin's death.

In order to do this, she offered in evidence the court record as heretofore quoted. She then took the stand herself and testified she had not seen her father for 18 years; that after his death, on May 23, 1942, she learned that he had been living in Lancaster County under an assumed name; that she had collected $1,100 for the wrongful death of her father in an automobile accident; and that besides this death claim only $74 had come into her hands as administratrix.

With the money she received, she had paid the administration expenses and all debts of her decedent with the exception of the alleged arrearages on the support order. After the payment of these debts and expenses, there was a balance which she divided between her brother and herself. As to all these matters plaintiff was a competent witness.

She was then asked questions tending to show that the support order had not been complied with by her father, the decedent. This evidence was objected to on the ground that the witness was not competent to testify to matters occurring before the decedent's death. The chancellor took the view that the witness was incompetent, and did not consider her testimony bearing on the question whether the arrearages were due.

The mere fact that she was the administratrix of the decedent's estate did not render her incompetent:

Foringer v. Sisson, 14 Pa. Superior Ct. 266 (1900) ; but when she sought by her testimony to assert an interest contrary to the interest of the decedent she became incompetent for that purpose: King et al. v. Lemmer, 315 Pa. 254 (1934). In Groome's Estate, 337 Pa. 250 (1940), the Supreme Court, quoting from an early case, said (p. 225) :

"It is only a fixed vested interest, that disqualifies. The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment . . ."

This plaintiff as one of the beneficiaries of the support order stood to gain if the claim was admitted and the transfer set aside. Argument is made that the arrearages were the property of Sallie Guldin, who raised her children, and would be subrogated to their rights.

This argument is met by the same fact that there is no competent evidence that Sallie Guldin did raise the children, or that the father did not comply with the support order.

As we view it, the question here is not so much whether the assignment was made in fraud of creditors, as whether when the bill was filed to set it aside there were any creditors who were or could be defrauded. This is not the case of a wife seeking to set aside an instrument on the ground that it was executed in order to defraud her of her dower rights, as was the situation in Waterhouse v. Waterhouse, 206 Pa. 433 (1903). It is, of course, true that under the Act of May 21, 1921, P. L. 1045, sec. 7, insolvency need not be established to set aside a transfer if actual fraud is shown: Stewart's Estate, 334 Pa. 356 (1939).

The chancellor did not find that there was actual fraud in the transfer of the account, and has discussed this aspect of the case in his discussion. We do not wish to add to what was there said. It is unfortunate

that other evidence was not produced, for it may well be that the claim for arrearages is a valid one. On this record, however, we are constrained to hold that plaintiff has not shown that any creditor was hindered, delayed, or defrauded by the transfer.

For the reasons above set forth, as well as for those advanced by the chancellor in his discussion, we are of the opinion the exceptions must be dismissed.

And now, November 12, 1943, the exceptions are dismissed.