# Berg et al., Appellants, v. Cypher.

*Appeals—Facts found by court below—Evidence.*

1. Where the facts found by the court below depend on the testimony of witnesses, of which there is sufficient to support them, they must be accepted as true by the Supreme Court.

2. Especially is this so where the court below saw the witnesses, and hence was better able to judge what weight should be given to their testimony.

*Contract—Agreement to give a bond—Sufficiency of bond.*

3. An agreement to give a bond to secure specified payments, does not require that there shall be sureties on it. It is sufficient if the bond given or tendered will in fact secure the payments.

*Contract—Settlement of litigation—Setting aside agreement—Fraud or imposition.*

4. Where the parties agree to the settlement of a litigation, the settlement will not be set aside because the party seeking so to do had a good cause of action in the original proceeding. Only the facts and circumstances affecting the agreement or settlement are pertinent in considering whether or not it should be set aside.

5. Fraud or imposition must appear in order to set aside an agreement of settlement.

Argued October 5, 1927. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 2, March T., 1928, by plaintiffs, from decree of C. P. Butler Co., Dec. T., 1926, No. 1, for specific performance of a settlement agreement in an equity suit of Margaret Berg, Martha Berg and Annie Berg v. George A. Cypher, Jr. Affirmed.

Petition by George A. Cypher, Jr., for specific performance of settlement agreement. Before GRAFF, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Decree for petitioner. Plaintiffs appealed.

*Error assigned,* inter alia, was decree, quoting record.

*James E. Marshall,* with him *Thomas W. Watson,* for appellants.

*James O. Campbell, James M. Galbreath* and *Zeno F. Henninger,* for appellee, were not heard.

OPINION BY MR. JUSTICE SIMPSON, November 28, 1927:

The court below decreed that satisfaction should be entered of record in the equity suit in this case, upon defendant paying plaintiffs the money stipulated in an agreement of settlement thereof, and upon his delivering to them a bond as specified therein; or, if plaintiffs refused to accept the money and bond, upon such payment and delivery being made to the prothonotary for their use. From this decree, plaintiffs appeal. Notwithstanding the earnest argument of their counsel, and our sympathy for his clients, in the losses they sustained by reason of being partners in a banking business which failed through no fault of theirs, we cannot do otherwise than affirm the decree. The facts, as found by the court below, are as follows:

Plaintiffs filed a bill in equity, seeking to have it decreed that a conveyance in fee simple, which they had made to defendant nearly four years before, was intended to be in trust, and that they were now entitled to have reconveyed to them the property described in it. His answer was a total denial of their claim. When the case was about to be reached for trial, they asked a mutual friend to see if it could not be settled. Defendant at first refused to consider the matter, but later agreed

to meet with them to discuss it. At the interview, two of the plaintiffs, defendant and the mutual friend were present. The negotiations lasted for three and a half hours, during about one-fourth of which time defendant was not present, he having left the place of meeting to allow the two plaintiffs and the mutual friend to consider the matter in his absence. As a result of the interview, a written agreement was drawn by the mutual friend, by which, in consideration of the settlement of the equity case, defendant agreed to pay each of plaintiffs $100 a month for the period of six years, and "to give bond securing these payments." The paper was then signed by the two plaintiffs and by defendant, and was witnessed by the mutual friend, who took it, on the evening of the same day, to the house of plaintiffs, where it was signed by the third of them. The next day one of plaintiffs called at defendant's place of business, received a check for the first payment of $300, herself wrote and signed a receipt for it, and received also a bond with warrant of attorney signed by defendant, but without surety, to protect them in the payments yet to be made. At the same time, she received from defendant an additional sum of $10,500, arising in another transaction, and returned to him his notes aggregating that amount.

Claiming that the agreement had been wrongfully obtained, and that they desired to rescind it, plaintiffs returned the check and the agreement some ten days after the settlement, and, some six weeks later, returned the bond also. Neither at the time they received the check and the bond, nor at the time they were returned, did plaintiffs object to the character of either document, as not complying with the terms of settlement. Defendant refused to consent to the rescission, and, a month after the settlement, sent to plaintiffs a check for the second payment of $300, which they also returned.

Plaintiffs admit that the settlement was their own voluntary act, not induced by any wrongful word or

deed of defendant or the mutual friend; that they understood and were satisfied with the agreement at the time it was made, and that they signed it because they did not want to appear in court on the trial of the equity case. They claimed, however, that they had been frightened into signing it by statements they heard, coming to them from others than defendant, that they were bound to lose the equity case (that is, they were afraid to continue the litigation for that reason); and that, on the trial of it, unpleasant things might be said regarding the banking firm of which they had been members, the difficulties of which caused plaintiffs to make the deed which they sought to have cancelled by the bill in equity.

As the facts we have thus recited were found by the court below, from the testimony of witnesses, of which there was sufficient to support the findings, we must accept them as true (Milford Boro. v. Burnett, 288 Pa. 434), especially where, as here, the court below saw the witnesses and hence was better able to judge what weight should be given to their testimony: Frank B. Hall & Co., Inc., v. Lyon, Singer & Co., 286 Pa. 119.

Plaintiffs further claim, however, that there are four legal reasons why the decree below was wrong. (1) That defendant occupied a confidential relation towards them, and hence should not be permitted to benefit by the agreement of settlement, which was greatly to his advantage. Unquestionably he had, at one time, occupied that relation, but this was not so after the dispute regarding the original conveyance began, and at least one of plaintiffs was bitterly inimical to him at the time of settlement. (2) That plaintiffs were advanced in years, and were unfamiliar with business matters, while defendant was a shrewd business man, and hence they could be and were easily imposed upon. Unfortunately for this contention, however, plaintiffs admitted, and the court below found, that they sought the settlement, and fully understood it when made; certainly it was

plain enough for any one to understand. (3) That the bond which defendant gave to them had no surety upon it, and hence was not the character of bond contemplated by the agreement. This they attempted to buttress by the statement that they did not know anything about bonds, except bonds with coupons attached, such as government and city bonds, which certainly are not surety bonds. This claim would appear to be a legal contention of their counsel, seeking, after the event, to find a reason for overthrowing what he considers to have been unfair treatment of his clients, rather than their claim that they were entitled to a bond with sureties on it. The agreement did not so provide, probably because plaintiffs then deemed it an immaterial matter, if, indeed, they gave any consideration to the subject. The bond which they at first accepted without objection, contained a warrant of attorney to confess judgment, which, if it had been entered of record, would have bound unencumbered property owned by defendant, sufficient in value to secure them during the running of the six years period, and hence was all the security plaintiffs were entitled to have.

The fourth legal contention made by plaintiffs is that the rule taken to compel satisfaction of the equity suit, was, in effect, a bill for specific performance of the agreement of settlement, and hence was governed by the principle that a decree will not be entered in such a case, if it would be unconscionable to do so, as they allege it would be here. Plaintiffs go far afield, however, when they attempt to apply the principle. Their contention is based entirely on the theory that the alleged unconscionableness is to be determined exactly as it would have been had they been trying the issues raised in the original equity suit. This is a mistake of theirs; the evidence here was properly limited to the facts and circumstances affecting the agreement of settlement: Berks & Dauphin Turnpike Co. v. Hendel, 11 S. & R. 123; Flegal v. Hoover, 156 Pa. 276, 280. It is

a matter of indifference whether or not plaintiffs had a good cause of action in the original proceeding, or, if they had, that they did not know it when they agreed to the settlement: Bierer's App., 92 Pa. 265; Zentmyer v. Zentmyer, 69 Pa. Superior Ct. 496. If such extraneous evidence was admissible, a "compromise, instead of being an end of litigation which the law favors, would be only an additional complication in the progress of it": Bailey v. Phila., 167 Pa. 569, 572. It is only fraud or imposition, in obtaining an agreement of settlement, that is a defense to it: Barton v. Wells, 5 Wh. 225; Worrall's Accounts, 5 W. & S. 111. Here, the court below has found there was no fraud or imposition.

If the bill in equity had been tried, and plaintiffs had won, they would probably have received more than they will get under the agreement; if they had lost, they would have received nothing; by the settlement they get $21,600, payable in monthly installments of $300 each. Keeping this in mind, and recalling how difficult it is to reform a plain contract (Gianni v. Russell & Co., Inc., 281 Pa. 320; Garrison v. Salkind, 285 Pa. 265), a difficulty greatly increased when the attempt is made as against an absolute deed of realty, solemnly acknowledged as well as signed, and under which possession was taken and continued unchallenged for nearly four years (see Breneiser v. Davis, 141 Pa. 85; Turney v. McKown, 242 Pa. 565; Gassner v. Gassner, 280 Pa. 313, 317), the court below could not say, nor can we, that the settlement was unconscionable.

So far as we can deal with the matter, therefore, no reversible error is disclosed; but defendant must still comply with the decree appealed from within such time as the court below shall direct.

The decree of the court below is affirmed and the appeal is dismissed, at appellants' costs.